UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

RAFAEL ALVAREZ SUAREZ, *et al.*,

Petitioner,

v.

DARIN BALAAM, *et al.*,

Respondents.

Case No. 2:26-cv-01366-RFB-NJK

**ORDER GRANTING JOINT PETITION FOR WRIT OF HABEAS CORPUS**

I.   INTRODUCTION AND BACKGROUND

Petitioners are seven noncitizens detained in the District of Nevada in the custody of U.S. Immigration and Customs Enforcement ("ICE"). Through their Amended Joint Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, Petitioners assert they are members of the certified class action pending before this Court in Jacobo-Ramirez v. Mullin, No. 2:25-CV-02136-RFB-MDC (D. Nev.) ("Class Members"). See generally Second Amended Joint Petition for Writ of Habeas Corpus for Class Members of Jacobo-Ramirez, ECF No. 16 [hereinafter, "Petition" or "Am. Pet."]; see also Jacobo-Ramirez v. Noem, 823 F. Supp. 3d 1182 (D. Nev. 2026) (certifying class of undocumented noncitizens who are or will be subject to mandatory detention within the District of Nevada under the Executive Branch's reinterpretation of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1225(b)(2)(A)).

Petitioners seek enforcement of their rights as Class Members, which were adjudicated by this Court's grant of partial summary judgment on March 30, 2026. See Jacobo-Ramirez v. Mullin, No. 2:25-CV-02136-RFB-MDC, 2026 WL 879799 (D. Nev. Mar. 30, 2026) (granting summary judgment in favor of Class Members on their statutory and regulatory claims). Through the Jacobo-Ramirez judgment, the Court declared that Class Members "are subject to detention under

8 U.S.C. § 1226(a) and its implementing regulations 8 C.F.R. §§ 236.1, 1236.1 & 1003.19" and "not subject to detention under 8 U.S.C. § 1225(b)(2)(A)." Id. at *33. The Court further set aside (i.e. vacated) the detention policies of the U.S. Department of Homeland Security ("DHS") and the U.S. Department of Justice ("DOJ")—which arose from their novel interpretation of § 1225(b)(2)(A)—as unlawful under the INA and its implementing regulations, under the Administrative Procedures Act ("APA"), 5 U.S.C. § 706(2)(A). See id. Those policies were captured in an internal memorandum issued to U.S. Immigration and Customs ("ICE") on July 8, 2025 titled "Interim Guidance Regarding Detention Authority for Applicants for Admission" [hereinafter, "the July 8th Memo"] and the Board of Immigration Appeals ("BIA") decision in Matter of Yajure Hurtado, 29 I. & N. Dec. 216 (BIA 2025) [hereinafter, "Hurtado"]. See id. at *8–9 (discussing the July 8th Memo, which is "formal nationwide policy of DHS and DOJ," and Hurtado, which adopted the policy captured in the July 8th Memo and legally binds all immigration judges (IJs)).

Petitioners seek release from their detention by Federal Respondents (also referred to herein as "the government"), who they assert refuse to comply with the Jacobo-Ramirez declaratory judgment and vacatur. See Am. Pet. at 8–11; Pet'rs' Joint Traverse at 5–8, ECF No. 17. Petitioners also assert their detention violates the Due Process Clause of the Fifth Amendment. See id. at 12–14. In response,[1] the government concedes Petitioners are Jacobo-Ramirez Class Members. See Federal Respondents' Response to Petitioner's Verified Amended Petition, ECF No. 13 [hereinafter, "Return"]. The government invokes § 1225(b)(2)(A) as the basis for Petitioners' ongoing detention and fully incorporates "its prior litigated positions regarding" § 1225(b)(2)(A). See generally Return. It provides no response to Petitioners' due process claims and does not assert any individualized justifications for Petitioners' detention. See id.

---

[1] Respondent Sherrif Darin Balaam, Warden for Washoe County Jail, where Petitioners Manuel Vargas and Chinchilla-Ruano are currently detained, filed a Return stating he has "no independent authority to release Petitioners," and "offers no comment on the true nature of Petitioners' detention," because he is "solely the custodian" of Petitioners "per a detention services agreement with ICE." See Balaam Return, ECF No. 11. Respondent John Mattos, Warden for Nevada Southern Detention Center, where Petitioners Alvarez Suarez, Ibarra-Valdez, Singh, Garcia Espinoza, and Morataya are currently detained, filed a Response to the Petition stating he "has no independent authority to release" Petitioners and takes "no position on the habeas or bond relief sought." See Mattos Return, ECF No. 19.

As discussed below, the Court finds that Petitioners are Jacobo-Ramirez Class Members. Therefore, their arrest and ongoing detention under § 1225(b)(2)(A) is unlawful and violates this Court's declaratory judgment and vacatur. Further, the Court finds Petitioners' arrest and ongoing detention without the procedural protections required under § 1226(a) violate their constitutional right to due process. Finally, the Court finds the appropriate remedy for Petitioners' unlawful detention and the government's defiance of the Jacobo-Ramirez judgment is immediate release from custody, a permanent prohibitory injunction against re-detention under § 1225(b)(2)(A), and an order requiring Federal Respondents to follow appropriate procedures in the event they seek to re-detain Petitioners under § 1226(a).

## II.    CLASS MEMBERSHIP

The Court begins with whether Petitioners are members of the Jacobo-Ramirez Class, which is defined as:

> All noncitizens in the U.S. without lawful status (1) who are or will be arrested or detained by ICE; (2) who are or will be in removal proceedings before an Immigration Court within the District Nevada; (3) whom DHS alleges or will allege to have entered the United States without inspection or parole; (4) who are not or will not be subject to detention under 8 U.S.C. §§ 1226(c), 1225(b)(1), or 1231 at the time they are scheduled for or request a bond hearing; and (5) whose most recent arrest by ICE occurred inside the United States and not while arriving in the United States.

Jacobo-Ramirez, 2026 WL 879799, at *4.

The government concedes Petitioners are Class Members. See Return at 1–2, ECF No. 13. As discussed below, the only Petitioner whose status as a Class Member is in question is Petitioner Cesar Onaldo Morataya. The Court addresses the issue of his class membership below. Based on the undisputed verified factual allegations in the Petition, see Am. Pet. at 8–12, ECF No. 16, and the documentary evidence supplied by the parties, see Am. Pet., Exs. 1–7, ECF Nos. 16-1–16-7; Return, Exs. A–G, ECF Nos. 13-1–13-7, the Court finds the remaining Petitioners[2] satisfy the

---

[2] In their Traverse, Petitioners Ibarra-Valdez and Singh note the existence of a May 6, 2026, removal order, and a May 6, 2026, voluntary departure order, respectively, which indicate they waived their right to appeal those orders. See Pet'rs' Joint Traverse at, ECF No. 17. They challenge any assertion that

criteria for Jacobo-Ramirez Class Membership. See Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950) (describing the factfinding process in habeas corpus proceedings).

### A. Petitioner Cesar Onaldo Morataya

In a recent filing, Federal Respondents suggest (but do not explicitly assert) Petitioner Cesar Onaldo Morataya is no longer a Class Member, based on a change in the status of his removal proceedings. See Federal Respondents' Motion for Leave to Transfer Petitioner Morataya, ECF No. 20 [hereinafter, "Mot. to Transfer"]. Federal Respondents seek leave to remove Mr. Morataya from the District of Nevada to effectuate his removal order, dated May 22, 2026, which they assert is final as of June 22, 2026. See id. at 1; id., Ex. A, ECF No. 20-1 (May 22, 2026 order of the immigration judge summarizing oral decision in Mr. Morataya's removal proceedings). Federal Respondents assert, without supporting evidence, that "[b]ased on recent information obtained from ICE, Petitioner has not filed an appeal" of that removal order and "Petitioner was represented by private retained counsel" in his removal proceedings. See Mot. to Transfer at 1.

In response, Mr. Morataya provides an audio recording of the removal hearing, which evidences that, contrary to ICE's representation, he was unrepresented at his May 22, 2026, removal hearing and is pursuing his appeal *pro se*, after his previously retained counsel withdrew on May 13, 2026. See Pet'r's Morataya's Opp'n to Mot. to Transfer at 2, ECF No. 22 [hereinafter "Pet'r's Opp'n; id., Ex. A at 01:50–03:55; 0:5:30, ECF No. 23. The recording further reveals that after he reserved his appellate rights, Mr. Morataya received limited information from the IJ regarding how to file his appeal; he was instructed to file an Executive Office for Immigration Review ("EOIR") notice of appeal form, EOIR-26. Id., Ex. A at 47:30–49:15 ("To appeal, you're going to have to file an EOIR Form 26 . . . within 30 days of today . . . with the [BIA] in Falls

their purported waivers of their appellate rights were voluntary, knowing, or intelligent and assert the orders are not final under the relevant statute, 8 U.S.C. § 1101(a)(47)(B), suggesting they would appeal those orders to the BIA. See id. at 4.

Federal Respondents have provided no response to Petitioners' assertion that their purported waivers of their appellate rights were invalid. See Garcia v. Lynch, 786 F.3d 789, 792 (9th Cir. 2015) (DHS "bears the burden to establish a valid waiver by clear and convincing evidence"). Absent information and records that are in Federal Respondents' custody and control, this Court has no independent ability to determine the status of Petitioners' removal proceedings. Thus, the Court finds on the record before it that Petitioners' Ibarra-Valdez and Singh are Jacobo-Ramirez Class Members, as they represent, and as represented by Federal Respondents in these proceedings.

Church, Virginia . . . And you're going to have to identify for the [BIA] why you think my decision is wrong. And everything must be received at the [BIA] on or before Monday, June 22, 2026 . . . If the Board doesn't receive your notice of appeal on time you are waiving and giving up your right of appeal . . . please ask the officer for EOIR Form 26."); see also Matter of Rodriguez-Diaz, 22 I. & N. Dec. 1320, 1323 (BIA 2000) (discussing the requirement for the immigration court to provide a "reasonably comprehensive" explanation to a *pro se* noncitizen regarding their right to appeal and how to appeal).

According to Mr. Morataya, immediately after the removal hearing, he asked an officer at Nevada Southern Detention Center ("NSDC") for the EOIR-26 form and was provided one the same day. Pet'r's Opp'n at 4. Subsequently, Mr. Morataya sent several electronic requests for a copy of his removal order to the Las Vegas Immigration Court through an e-tablet provided at NSDC. Id. He also requested a copy from an ICE officer who visits immigration detainees at NSDC on a weekly basis to answer their questions. Id. Despite his repeated requests, Mr. Morataya never received a copy of his removal order. Id. Petitioner then completed the EOIR-26 form to the best of his ability, placed it in a large yellow envelope addressed to the BIA in Falls Church, Virginia, and placed that envelope in the designated outgoing mailbox at NSDC on June 17, 2026. Id. He was unable to make a copy of the EOIR-26 form he mailed because the copy machine at NSDC has been broken since early June. Id.

Mr. Morataya asserts he timely appealed his removal order as instructed by the IJ, but even if his appeal was not received by the BIA before June 22, 2026, circumstances beyond his control would warrant equitable tolling of the appeal deadline. Id. at 4–5 (citing Zafra v. Blanche, No. 24-3341, 2026 WL 1785105, at *1–2 (9th Cir. June 22, 2026) (finding BIA summarily dismissed a removal order appeal without sufficient explanation as to whether equitable tolling applied to the noncitizen's untimely notice of appeal and remanding for further proceedings) (citing Irigoyen-Briones v. Holder, 644 F.3d 943, 949 (9th Cir. 2011)). Federal Respondents have filed no reply in support of their Motion to remove Petitioner Morataya.

Based on the present record, the Court cannot conclude that Mr. Morataya's removal order is final such that he is no longer a Jacobo-Ramirez Class Member, because Mr. Morataya, who

does not speak English, is unrepresented in his removal proceedings, and is detained with severely limited access to the resources necessary to obtain, retain, and file relevant documents, asserts he timely filed his appeal to the BIA as instructed. The timeliness of that appeal is for the BIA to determine, and potentially for the Ninth Circuit to review, if the BIA dismisses his appeal as untimely and he seeks review. See Gonzalez-Julio v. INS, 34 F.3d 820, 823 (9th Cir. 1994) (holding "[t]he BIA's dismissal is a final agency action for which [the noncitizen] can petition for review" and finding the regulations governing the timing and method for filing a notice of appeal did "not meet the essential standard of fairness under the Due Process Clause," where the noncitizen "had no control over the mail nor over when the Office of the Immigration Judge files the appeal after receipt.") (citing Houston v. Lack, 487 U.S. 266, 270–71 (1988)). Indeed, the circumstances Mr. Morataya describes are concerning and may warrant deviation from BIA regulations. See Houston, 487 U.S. at 270–71 (holding the unique situation of a prisoner without counsel, who cannot take steps to monitor the processing of notices of appeal, required deviation from the traditional rules, such that delivery of a notice of appeal to prison authorities by a prisoner constituted filing in federal court).

In any event, until the BIA issues a decision on Mr. Morataya's appeal, his removal order is not "administratively final," he cannot be detained under 8 U.S.C. § 1231, and he remains in removal proceedings in the District of Nevada for purposes of Jacobo-Ramirez Class Membership. See Johnson v. Guzman Chavez, 594 U.S. 523, 535 (2021) (interpreting the meaning of "administratively final," which begins the removal period under 8 U.S.C. § 1231, as meaning "there is nothing left for the BIA to do with respect to the removal order other than to execute it."). The Court thus finds Petitioner remains a Jacobo-Ramirez Class Member and turns to the merits of his Petition: the lawfulness of his detention.

In sum, Petitioners are Jacobo-Ramirez Class Members entitled to enforcement of the declaratory judgment and vacatur afforded to the Class by this Court. The declaratory judgment entered in favor of Jacobo-Ramirez Class Members has "the force and effect of a final judgment or decree." 28 U.S.C. § 2201. In other words, the "declaratory judgment is a real judgment, not just a bit of friendly advice." Badger Cath., Inc. v. Walsh, 620 F.3d 775, 782 (7th Cir. 2010). As

parties to Jacobo-Ramirez, Federal Respondents are therefore obligated to comply with that judgment. See, e.g., Maness v. Meyers, 419 U.S. 449, 458 (1975) ("We begin with the basic proposition that all orders and judgments of courts must be complied with promptly."); United Aeronautical Corp. v. United States Air Force, 80 F.4th 1017, 1031 (9th Cir. 2023) ("But in suits against government officials and departments, we generally assume that they will comply with declaratory judgments.").

Federal Respondents—who have not filed an appeal in Jacobo-Ramirez—offer no explanation for their continued reliance on § 1225(b)(2)(A) to detain Petitioners in violation of this Court's binding judgment. See Haaland v. Brackeen, 599 U.S. 255, 293 (2023) ("After all, the point of a declaratory judgment is to establish a binding adjudication that enables the parties to enjoy the benefits of reliance and repose secured by *res judicata*.") (citation modified); id. ("This form of relief conclusively resolves the legal rights of the parties.") (citation modified). Thus, Petitioners were forced to seek enforcement of the Jacobo-Ramirez judgment through this habeas proceeding, and the Court must reiterate its finding that their ongoing detention under § 1225(b)(2)(A) is unlawful, because their detention is governed by § 1226(a) and its implementing regulations. See Jacobo-Ramirez, 2026 WL 879799, at *33.

## III.   DUE PROCESS

The government provides no response to Petitioners' claim that their detention without the procedures required under § 1226(a) violates due process. Importantly, Petitioners' classwide due process claim has not yet been litigated in Jacobo-Ramirez. See Jacobo-Ramirez, 2026 WL 879799, at *2 ("Plaintiffs also claim that the [the government's detention] policies . . . violate their due process rights under the Fifth Amendment (Ground IV), but they do not currently seek summary judgment on those claims."). The Court thus turns to the merits of Petitioners' due process claims.

Class Members and similarly situated noncitizens are entitled to due process under the Constitution. See, e.g., Escobar Salgado v. Mattos, 809 F. Supp. 3d. 1123, 1158–60 (D. Nev. 2025); Jacobo-Ramirez v. Noem, 817 F. Supp. 3d. 1037, 1053–54 (D. Nev. 2025). The Due

Process Clause guarantees that noncitizens "who have once passed through our gates, *even illegally*, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law." Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 212 (1953) (emphasis added). Noncitizens who have entered our country are entitled to due process "whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." Id. at 690. Consequently, the government may not deny "notice" or "an opportunity to be heard" to a noncitizen "who has entered the country, and has become subject in all respects to its jurisdiction, and a part of its population, although alleged to be illegally here." Yamataya v. Fisher, 189 U.S. 86, 100–01 (1903).

Section 1226(a) and its regulations guarantee noncitizens detained under that provision multiple levels of "substantial procedural protections" against the erroneous deprivation of their liberty. See Jacobo-Ramirez, 2026 WL 879799, at *6 (quoting Rodriguez Diaz v. Garland, 53 F.4th 1189, 1196 (9th Cir. 2022)). These protections include, *inter alia,* the requirement that a noncitizen cannot be arrested without an administrative warrant or detained without notice of the basis for their detention through a notice to appear, both of which must be signed and served by supervisory immigration officers; the requirement that an ICE officer with designated authority conduct an initial custody determination at the outset of detention, wherein the noncitizen has an opportunity to "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding"; and the right to appeal an ICE officer's initial custody determination through a prompt bond hearing before an IJ based on individualized evidence, wherein the IJ will order release on bond if the noncitizen establishes that they are not "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." See id. at *6–7 (citing 8 C.F.R. §§ 236.1(c)(8); 236.1(d)(1); 287.5(d); 287.8(c)(2)(i)-(ii); 1003.19; quoting Rodriguez Diaz, 53 F.4th at 1196) (citation modified).

The government's novel mass detention policies under § 1225(b)(2)(A) require no

comparable procedures to ensure its detention authority respects constitutional limits. Lopez-Campos v. Raycraft, 175 F.4th 713, 732 (6th Cir. 2026) ("[T]he government's ability to detain noncitizens is not limitless. It should effectuate two regulatory goals: (1) ensuring the appearance of noncitizens at future immigration proceedings and (2) preventing danger to the community.") (citing Zadvydas, 533 U.S. at 690). As a result, noncitizens like Petitioners are indiscriminately arrested by ICE officers in the interior of the country and subjected to months of detention without procedures to ensure the government considers—let alone substantiates—whether it has a constitutionally recognized interest in depriving them of their liberty.

Indeed, ICE's § 1225(b)(2)(A) detention policy specifically instructs ICE agents against issuing any "Form I-286, Notice of Custody Determination" to noncitizens like Petitioners, because individual custody determinations are only required under § 1226. See Jacobo-Ramirez, 2026 WL 879799, at *8 (quoting the July 8, 2025 Memo; citing 8 C.F.R. § 236.1(c)(8)). Despite the Court's vacatur of that policy as to Class Members on March 30th, see id. at *33, as Petitioners' circumstances illustrate, the government is still detaining Class Members without any consideration of their dangerousness or risk of absconding from removal proceedings.[3] But the government has "no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017); see also Barbosa da Cunha v. Freden, 175 F.4th 61, 94 (2d Cir. 2026) ("While noncitizens can be detained temporarily to 'give[ ] immigration officials time to determine an alien's status without running the risk of the alien's either absconding or engaging in criminal activity,' that is not what is going on here, where detention is mandatory regardless of these risks.") (quoting Jennings v. Rodriguez, 583 U.S. 281, 286 (2018)).

Considering the above, this Court found the government's expansion of § 1225(b)(2)(A) to mandate the detention of millions of undocumented noncitizens living in the United States,

---

[3] As explained in greater detail below, infra-Part III, Federal Respondents did not conduct initial custody determinations for any Petitioner in this case, and have recently confirmed that they are not conducting initial custody determinations or issuing Form I-286 notices of such determinations to any Class Members.

many of whom, like Petitioners, are "neighbors, spouses, mothers, fathers, and grandparents of American citizens," Jacobo-Ramirez, 2026 WL 879799, at *2, raises serious constitutional concerns. See id. at *26–29 (discussing the due process and Fourth Amendment concerns raised by the government's application of § 1225(b)(2)(A) to Class Members); see also Barbosa da Cunha, 175 F.4th at 94–96 (finding the government's interpretation raised due process concerns including that it "would likely subject" noncitizens "to unconstitutionally prolonged detention," "compounded by the fact that noncitizens have no right to counsel and are therefore often unrepresented in removal proceedings" and thus "lack the ability to reliably challenge their detention or the conditions in which they are being held."). Many of these constitutional concerns are Petitioners' current reality.

As such, this Court finds that Petitioners are entitled to the procedural protections provided by § 1226(a), not merely by statute and regulation, but also by the Due Process Clause. The procedural protections required under § 1226(a) encompass pre-deprivation notice of the individualized basis for ICE's decision to detain a noncitizen, which is "subject to numerous levels of review, each offering [the detainee] the opportunity to be heard by a neutral decisionmaker." Rodriguez Diaz, 53 F.4th at 1210. As illustrated below, Petitioners' arrest and detention without those protections violate their right to procedural due process. Likewise, the government's failure to articulate a constitutionally recognized interest in detaining Petitioners, including in these habeas proceedings, violates their right to substantive due process. See Zadvydas, 533 U.S. at 690.

### A. Procedural Due Process

To determine what process is due under the Constitution, courts apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976) to analyze and balance both the private and governmental interests affected. See Rodriguez Diaz, 53 F.4th at 1203–07 (collecting cases and finding the Mathews test appropriate in the context of immigration detention). Specifically, courts weigh the following factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens

that the additional or substitute procedural requirement[s] would entail." Mathews, 424 U.S. at 335 (citation modified).

On balance, these factors weigh heavily in favor of Petitioners. First, Petitioners have a paramount interest in their physical liberty. That interest is especially weighty considering the lack of process they received, and that has been available to them, upon their arrest and throughout their detention. See Rodriguez Diaz, 53 F.th at 1208 (considering the process the immigration detainee had already received during his detention under § 1226(a) and the further process that was available to him in weighing his private liberty interest). Unlike the detainee in Rodriguez Diaz who was afforded the full breadth of procedural protections under § 1226(a), Petitioners have been afforded no meaningful pre-deprivation notice or opportunity to be heard regarding ICE's determination that their detention is necessary pending final adjudication of their removal proceedings.

Second, the risk of erroneous deprivation of liberty is extraordinarily high under the government's current procedures (or absence thereof), which do not require any individualized determination that Petitioners' detention serves its constitutionally recognized regulatory goals. Nor have Petitioners been provided with timely notice and an opportunity to challenge the government's basis for their arrest and detention under § 1225(b)(2)(A), as, for example, based on a mistake of fact, in contrast to procedural protections available under other mandatory detention provisions of the INA that apply to noncitizens (like Petitioners) who are arrested within the interior of the country and not while arriving[4] at its borders. See, e.g., Demore v. Kim, 538 U.S. 510, 514 n.3 (2003) (describing the availability of a "Joseph hearing," which is "immediately provided to a detainee who claims that he is not covered by § 1226(c)," and where "the detainee may avoid mandatory detention by demonstrating that he is not an alien, was not convicted of the predicate crime, or that [the agency] is otherwise substantially unlikely to establish that he is in

---

[4] Federal Respondents' arrest and detention policy under § 1225(b)(2)(A) specifically instructs arresting ICE officers to treat noncitizens like Petitioner "in the same manner that 'arriving aliens' have historically been treated." Jacobo-Ramirez, 2026 WL 879799, at *8 (quoting the July 8, 2025 Memo).

- 11 -

fact subject to mandatory detention.") (citing 8 C.F.R. § 3.19(h)(2)(ii) (2002); Matter of Joseph, 22 I. & N. Dec. 799 (BIA 1999)).

In contrast, longstanding procedures, which the government has only recently abandoned after thirty years of consistent prior practice, require an administrative warrant, a determination by ICE that Petitioners' detention is justified based on their individual circumstances, written notice of that determination, and a prompt opportunity to be heard by an IJ regarding ICE's determination, subject to multiple levels of administrative and judicial review. See Jacobo-Ramirez, 2026 WL 879799, at *29–31; see also Rodriguez Diaz, 53 F.4th at 1210. These alternate procedures significantly reduce the risk of erroneous deprivation.

Third, the government's interest in enforcing immigration law and presumed interest in detaining noncitizens who pose a danger to their community or a flight risk, are served, and not unduly burdened, by the longstanding procedural protections provided to noncitizens like Petitioners to ensure they are indeed a danger to the community or at risk of absconding from their removal proceedings. See Escobar Salgado, 809 F. Supp. 3d. at 1160–62. Moreover, the additional procedural requirements afforded under § 1226(a) serve to *reduce* the fiscal and administrative burden of civil immigration detention. See Jacobo-Ramirez, 2026 WL 879799, at *30 ("Recent estimates by the federal government find that supervised release programs such as those available under § 1226 cost less than $4.20 each day per participant, compared with detention costs of $152 per day.") (citation modified).

## B. Substantive Due Process

Substantive due process protects individuals from government action that interferes with fundamental rights. See Regino v. Staley, 133 F.4th 951, 959-60 (9th Cir. 2025). "Governmental action that infringes a fundamental right is constitutional only if 'the infringement is narrowly tailored to serve a compelling state interest.'" Id. at 960 (quoting Reno v. Flores, 507 U.S. 292, 302 (1993)). Civil immigration detention violates a noncitizen's substantive due process rights except in certain "special and narrow nonpunitive circumstances where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." Zadvydas, 533 U.S. at 690 (citation modified) (quoting Foucha v. Louisiana, 504 U.S. 71, 80

(1992); Kansas v. Hendricks, 521 U.S. 346, 356 (1997)).

To date, the government has not asserted an individualized justification—let alone a special or compelling justification—for depriving Petitioners of their freedom. Thus, the Court finds that their detention violates substantive due process. Cf. Escobar Salgado, 809 F. Supp. 3d. at 1162 (elaborating on this same analysis and reaching the same conclusion).

For the foregoing reasons, the Court has little difficulty concluding that Petitioners' detention violates procedural and substantive due process and is, therefore, unconstitutional.

## IV.    REMEDY

Based on the record before it, the Court finds that Petitioners have been subjected to months of arbitrary detention in violation of their statutory and constitutional rights, as well as the Jacobo-Ramirez judgment. The Court's task then is to determine the appropriate remedy for these violations. See Sanders v. Ratelle, 21 F.3d 1446, 1461 (9th Cir. 1994) ("A federal court is vested with the largest power to control and direct the form of judgment to be entered in cases brought up before it on habeas corpus. The court is free to fashion the remedy as law and justice require[.]") (alterations in original) (citation modified). For the following reasons, the Court finds that immediate release is the appropriate equitable remedy in this case.

First, the Court finds Petitioners' detention without a warrant and initial custody determination was void *ab initio* under § 1226(a) and its implementing regulations. Despite being ordered to do so, Federal Respondents have not filed a Form I-286 Initial Custody Determination or Form I-200 Administrative Warrant as to any Petitioner, or certified that such documents are not in their possession, custody, or control. Compare Order to Show Cause at 2, ECF No. 5 with Return, ECF No. 13. The Court finds the government's failure to produce evidence of a lawfully executed and served administrative warrant or individualized pre-deprivation custody determination is a concession that no such records exist as to Petitioners, and they were not afforded those procedures, which are required by statute and regulation. See Jacobo-Ramirez, 2026 WL 879799, at *31 ("Class Members are subject to detention under § 1226(a) and its implementing regulations. Defendants must therefore comply with 8 C.F.R. §§ 236.1(b); 236.1(c)(8) in arresting

- 13 -

and detaining any Class Member. If Defendants deny release on bond or conditional parole after an initial custody determination, Class Members are entitled to custody redetermination(s) before an immigration judge upon request consistent with 8 C.F.R. §§ 236.1(d); 1003.19.").

On that basis, the Court finds Petitioners' detention "was unlawful from its inception because ICE detained them under the wrong statute and without affording [them] any notice or process whatsoever, much less the procedures due under Section 1226(a)." Rodriguez-Acurio v. Almodovar, 811 F. Supp. 3d 274, 319–20 (E.D.N.Y. 2025) (ordering a noncitizen's release on this basis and finding a subsequent "bond determination by a DHS officer or an immigration judge would not remedy the core constitutional violation at issue[.]"); see also Djiwaje v. Bondi, No. 2:26-CV-00344-RFB-MDC, 2026 WL 926753, at *3–4 (D. Nev. Apr. 6, 2026) (finding "the legal authority to arrest and detain a noncitizen under § 1226(a) derives entirely from the I-200 [administrative warrant]'s compliance with governing regulations[,]" and in the absence of a showing that the warrantless arrest exception under 8 U.S.C. § 1357(a)(2) applied at the time of the noncitizen's arrest, the petitioner's seizure was unlawful such that release was the appropriate remedy) (citation modified). In the absence of a warrant and initial custody determination, which establishes a lawful basis for detention in the first instance, a subsequent bond hearing "is no substitute for the requirement that ICE engage in a deliberative process prior to, or contemporaneous with, the initial decision to strip" Petitioners of their freedom. Lopez Benitez v. Francis, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025) (citation modified). Immediate release is thus the appropriate remedy for Federal Respondents' "detain first, justify later" approach to Petitioners' liberty, which mangles § 1226(a)'s regulatory framework and due process.

Second, the Court finds immediate release is the appropriate remedy for Federal Respondents' ongoing defiance of the Jacobo-Ramirez judgment. The Court issued its declaratory judgment and vacated ICE's internal policy of not issuing initial custody determinations to Class Members on March 30, 2026. See Jacobo-Ramirez, 2026 WL 879799, at *33. Petitioners did not receive an initial custody determination; rather ICE applied its now vacated § 1225(b)(2)(A) policy to them and detained them without consideration of their dangerousness or flight risk. Three months have passed since the Jacobo-Ramirez judgment, yet ICE has not conducted an initial

custody determination for any Petitioner. Put simply, months after a binding judgment that (1) declared Petitioners' detention illegal and (2) vacated the agency policy underlying their arrest and detention, the government has taken no action to cure its unlawful conduct.

In fact, Federal Respondents have recently admitted, in Jacobo-Ramirez, that they are not conducting initial custody determinations or issuing Form I-286 Notices of Initial Custody Determinations to Class Members, even though they acknowledge the declaratory judgment and vacatur require those procedures. See Jacobo-Ramirez, No. 2:25-CV-02136-RFB-MDC, Hr'g. Tr. at 17:22–20:10, June 1, 2026, ECF No. 157. The Form I-286 Notice is especially significant because it is served on the detainee at the outset of detention and provides the formal mechanism— a box the detainee may check—to immediately request a custody *redetermination* hearing (*i.e.* bond hearing) before an IJ. See id. Importantly, then, by refusing to issue I-286 Notices, Federal Respondents are depriving Class Members like Petitioners of the ability to immediately and efficiently request a bond hearing in immigration court. As Federal Respondents have explained, the only process currently available for a detained Class Member to request a bond hearing is by mailing a written request to EOIR from their detention center. See id. at 22:17–30:3. Class Members receive no instructions regarding how to do so. See id. But If ICE had conducted an initial custody determination and served the Form I-286 Notice upon Petitioners' arrest consistent with 8 C.F.R. § 236.1, they could have immediately requested a bond hearing by simply checking a box.

Moreover, a custody *redetermination* hearing before an IJ without an *initial* custody determination by ICE, flouts the regulatory scheme, which delegates authority to IJs to hear "*[a]ppeals* from custody decisions" upon an application by the detainee "*[a]fter* an initial custody determination" by a designated officer. 8 C.F.R. § 236.1(d) (emphasis added). Accordingly, since ICE continues to enforce its vacated policy, any post-deprivation bond hearing before an IJ does not comply with § 1226(a)'s regulations, or, by extension, the Jacobo-Ramirez judgment.

The only justification Federal Respondents have provided for their noncompliance with the Jacobo-Ramirez judgment is that it "has no coercive effect." Jacobo-Ramirez, No. 2:25-CV-02136-RFB-MDC, Hr'g. Tr. at 45:5–51:10, June 15, 2026, ECF No. 167. Note, Federal

Respondents do not assert that their continued enforcement of a vacated policy and disregard for Class Members' adjudicated rights is legally defensible. Instead, they are exploiting the fact that, absent coercive classwide relief, the Court cannot coerce their compliance on a classwide basis through its contempt power. Consequently, in this, and countless other habeas matters filed by Jacobo-Ramirez Class Members, the government, which has yet to file an appeal in Jacobo-Ramirez, is disturbing the longstanding assumption that Executive Branch officials and departments will comply with a declaratory judgment unless and until it is stayed or vacated. See United Aeronautical Corp. v. U.S. Air Force, 80 F.4th 1017, 1031 (9th Cir. 2023). More fundamentally, the government is rebelling against the basic principle underlying our constitutional order that "an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings." United States v. United Mine Workers of Am., 330 U.S. 258, 293 (1947).

Despite Federal Respondents' open defiance, it is true that the declaratory judgment establishes Petitioners' rights but, standing alone, is not a self-executing command. See Steffel v. Thompson, 415 U.S. 452, 471 (1974) (explaining that a declaratory judgment "is not ultimately coercive; noncompliance with it may be inappropriate, but it is not contempt."). Similarly, this Court's vacatur under the APA "does not affect the Government's future actions" and "neither compels nor restrains further agency decision-making." Nat'l TPS All. v. Noem, 166 F.4th 739, 760 (9th Cir. 2026) (citation modified). In the absence of the threat of contempt, Federal Respondents have made clear that they will not conform their conduct to the Jacobo-Ramirez judgment voluntarily. The consequence is not that the lawfulness of Petitioners' detention is uncertain—this Court has already adjudicated it—but that Petitioners require an appropriate remedy in this habeas proceeding, backed by the Court's contempt power, to give effect to their clearly established rights as Class Members.

Finally, in fashioning the appropriate remedy, the Court considers the fact that Federal Respondents' disregard for its orders is not unique to the Jacobo-Ramirez judgment. Rather, Federal Respondents have engaged in a systemic pattern of noncompliance with this Court's orders in related habeas matters, apparently undeterred by the fact that, in contrast to the non-coercive

nature of the declaratory judgment and vacatur, those orders *are* backed by the Court's contempt power. These violations include, *inter alia*, removing petitioners from the District of Nevada, failing to release petitioners as ordered, disregarding deadlines, failing to provide constitutionally adequate bond hearings, and imposing unlawful release conditions. See Jimenez Gomez v. Dep't of Homeland Sec., No. 2:26-cv-00922-RFB-DJA, 2026 WL 1164736, at *2–3 (D. Nev. Apr. 29, 2026) (collecting examples).[5] "By violating this Court's orders, Respondents are undermining their credibility and the rule of law. Their conduct also causes unnecessary trauma and harm to petitioners" and squanders this Court's finite resources. Id.

For all these reasons, the Court will not ratify the government's lawless conduct by ordering a bond hearing. While ordering a prompt bond hearing at which the government bears the evidentiary burden by clear and convincing evidence may be an appropriate remedy in some cases, under these circumstances the Court declines to prolong Petitioners' unlawful detention any further. Ordering a bond hearing here "would effectively allow the Government to transform an

---

[5] Since the Court's decision in Jimenez Gomez, the Court has become aware of numerous other instances of Federal Respondents violating this Court's explicit orders. See, e.g., Sira v. Bondi, Case No. 2:26-CV-00828-RFB-DJA, ECF No. 8 (D. Nev. Apr. 21, 2026) (finding the government transferred petitioner out of the district in violation of court order and ordering return); Cortez Diaz v. Blanche, 2:26-CV-01056, ECF No. 10 (D. Nev. Apr. 29, 2026) (same); Yanes-Quijada v. Mattos, Case No. 2:26-CV-01221-RFB-NJK, ECF No. 16 (D. Nev. May 7, 2026) (finding the government failed to certify a lawful basis for a Class Member's detention in response to an order to show cause, failed to produce documents or certify they do not exist, etc., and ordering Petitioner's immediate release "given the egregious nature of his unjustified detention"); Garcia Diaz v. Mattos, No. 2:26-CV-00926-RFB-BNW, 2026 WL 1270816 (D. Nev. May 9, 2026) (finding the petitioner remained in detention in violation of the Court's Order and equitably estopping ICE from taking fundamentally inconsistent positions in federal habeas proceedings and immigration court); Cruz Perez v. Bondi, No. 2:26-CV-00316-RFB-DJA, ECF No. 31 (D. Nev. May 15, 2026) (finding the IJ failed to apply the appropriate evidentiary burden at a court-ordered bond hearing in violation of the Court's conditional writ, and ICE unilaterally imposed surveillance monitoring in violation of agency regulations and due process); Malta De Sa v. Mullin, No. 2:26-CV-00594-RFB-MDC, ECF No. 25 (D. Nev. May 19, 2026) (finding DHS and ICE unilaterally imposed burdensome release conditions on the petitioner in violation of the Court's explicit order prohibiting them from doing so); Alfaro Cruz v. Bernacke, No. 2:26-CV-00080-RFB-BNW, 2026 WL 1414096 (D. Nev. May 20, 2026) (finding Federal Respondents obviously failed to comply with the Court's conditional writ requiring a constitutionally adequate bond hearing and enforcing the Writ by ordering the petitioner's release); Bibiano v. Blanche, 2:26-CV-00927-RFB-BNW, ECF No. 19 (D. Nev. May 21, 2026) (despite ICE being given 24 hours to release Petitioner, they failed to provide advanced notice of the petitioner's release, and the petitioner could not be located by his counsel); Changyi v. Leyva, 2:26-CV-01280-RFB-MDC, ECF No. 21 (D. Nev. June 6, 2026) (petitioner was held in detention for an additional three days, despite having been granted bond and ordered immediately released by the immigration judge). This list is far from exhaustive.

unlawful detention into a lawful one through *post-hoc* justifications" and would inadequately remedy the harms Petitioners have suffered. Zheng v. Rokosky, --- F. Supp. 3d. ---, No. 26-CV-01689, 2026 WL 800203, at *11 (D.N.J. Mar. 23, 2026); see also, e.g., E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) ("Although the Government notes that Petitioner may request a bond hearing while detained, such a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty."); Domingo v. Kaiser, No. 25-CV-05893 (RFL), 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) ("Even if Petitioner[ ] received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention.") (citation omitted). Moreover, ordering a bond hearing would provide Federal Respondents with yet another opportunity to violate this Court's Orders and due process.[6]

The Court thus finds "the typical remedy" for "unlawful executive detention"—immediate release from custody—is appropriate here. Munaf v. Geren, 553 U.S. 674, 693 (2008). Additionally, the Court finds that it must adopt equitable remedies to ensure that Federal Respondents abide by due process moving forward, in the event they seek Petitioners' re-detention under § 1226(a). Cf. U.S. v. Handa, 122 F.3d 690, 691 (9th Cir. 1997) (describing the broad, flexible power federal courts possess to fashion equitable relief in the context of habeas corpus proceedings). Here, the Court finds it appropriate to require that, in the event DHS seeks

---

[6] In related habeas matters where the Court has issued a conditional writ, providing Federal Respondents an opportunity to cure the petitioner's unlawful detention through a constitutionally adequate bond hearing, DHS and the immigration courts have repeatedly defied the dictates of those orders, requiring post-judgment enforcement. See, e.g., Diaz v. Mattos, No. 2:26-CV-00926-RFB-BNW, 2026 WL 1270816, at *6 (D. Nev. May 9, 2026) (enforcing conditional writ after Federal Respondents asserted 8 U.S.C. § 1226(c) did not apply to Petitioner in response to his habeas petition, and then the immigration court denied Petitioner release on bond under § 1226(c) after a Court-ordered bond hearing); Cruz Perez v. Blanche, No. 2:26-CV-00315-RFB-DJA, Order Enforcing Writ, ECF No. 31 (D. Nev. May 15, 2026) (finding both DHS and the IJ openly defied the Court's requirement that the evidentiary burden be shifted to the government at the Court-ordered bond hearing, and that DHS' unilateral imposition of ankle monitoring defied agency regulations and the Court's order); Salazar-Lopez v. Mullin, No. 2:26-CV-00871-RFB-MDC, 2026 WL 1414066 (D. Nev. May 20, 2026) (finding the IJ failed to address the requirement that the evidentiary burden be borne by the government at the Court-ordered bond hearing); Alfaro Cruz v. Bernacke, No. 2:26-CV-00080-RFB-BNW, 2026 WL 1414096, at *4 (D. Nev. May 20, 2026) (finding Federal Respondents obviously failed to comply with this Court's conditional writ, which required the government to bear the evidentiary burden at Petitioner's bond hearing).

Petitioners' re-detention under § 1226(a), Federal Respondents must provide them with *a pre-deprivation* bond hearing before an IJ, wherein the government must prove, by clear and convincing evidence, that detention is appropriate. See Martinez v. Clark, 124 F.4th 775, 784 (9th Cir. 2024) (reviewing the immigration court and BIA's compliance with a district court's conditional writ ordering a bond hearing "under the Due Process Clause" wherein the government was required "to show by clear and convincing evidence that the detainee presents a flight risk or a danger to the community at the time of the bond hearing" to continue the petitioner's detention) (citing Singh v. Holder, 638 F.3d 1196, 1203 (9th Cir. 2011)). While the Court does not take this step lightly, it finds it is necessary because of Federal Respondents' egregious violations of law and Petitioners' rights to date.

## V.    CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Petitioners' Second Amended Joint Petition for Writ of Habeas Corpus (ECF No. 16) is **GRANTED**.

**IT IS FURTHER ORDERED** that Respondents must **RELEASE** Petitioners Rafael Alvarez Suarez, Martin Ibarra-Valdez, Gursewak Singh, Rodrigo Garcia Espinoza, Victor Manuel Vargas, Cristian Alexander Chinchilla-Ruano, and Cesar Onaldo Morataya from detention **ON PERSONAL RECOGNIZANCE on July 6, 2026** between the hours of **12:00 and 3:00 p.m.** Counsel for Petitioners (or their designee(s)/agent(s)) will be permitted to wait in the Federal Justice Tower lobby during the release window.

**IT IS FURTHER ORDERED** that Respondents are **PROHIBITED** from imposing release conditions that substantially interfere with Petitioners' liberty, such as electronic monitoring, without having established the reasonableness of those restrictions, by clear and convincing evidence, at a pre-deprivation hearing. If Federal Respondents impose release conditions in violation of this Order, the Court will consider contempt sanctions against the agency officials responsible.

**IT IS FURTHER ORDERED** that Respondents must return Petitioners' personal property, including any personal identification and employment authorization documents, **UPON**

**THEIR RELEASE.** If Respondents fail to do so, the Court will consider contempt sanctions against the agency officials responsible.

**IT IS FURTHER ORDERED** that Respondents are **PERMANENTLY ENJOINED** from detaining Petitioners pursuant to 8 U.S.C. § 1225(b)(2)(A).

**IT IS FURTHER ORDERED** that Respondents may not re-detain Petitioners during the pendency of their current removal proceedings until after an immigration court hearing is held, with adequate notice, to determine whether detention is appropriate under 8 U.S.C. § 1226(a) and its implementing regulations. At this hearing, the government must bear the burden of establishing that detention is appropriate by clear and convincing evidence.

**IT IS FURTHER ORDERED** that the Parties must file a **JOINT STATUS REPORT** by **July 9, 2026**, confirming Respondents' compliance with this Order including (i) the date and time of each Petitioner's release; (ii) compliance with this Court's directives concerning release on personal recognizance; and (iii) the return of each Petitioner's personal property.

**IT IS FURTHER ORDERED** that Federal Respondents' (ECF No. 20) Motion for Leave to Transfer Petitioner Cesar Onaldo Morataya is **DENIED**.

The Clerk of Court is kindly instructed to enter judgment accordingly and close this case.

The Court retains jurisdiction to enforce its order and judgment. Petitioners may move to reopen this case to enforce the judgment without filing a separate case. The Court also retains jurisdiction to consider Petitioners' request for fees and costs pursuant to 28 U.S.C. § 2412. Petitioners may file an application for fees and costs consistent with the deadlines and requirements set forth in 28 U.S.C. § 2412 and this Court's Local Rules of Practice 54-1 and 54-14.

**DATED:** July 2, 2026.

_____

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**